## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

YOHAN WEBB,

        Plaintiff,

vs.

BRAD JOHNSON, KEN PREY, RICK
GRAY, UNKNOWN NUMEROUS
CORRECTIONAL OFFICERS, SEAN
FLOWERDAY, CHRISTA YOAKUM,
DEB SCHORR, ROMA AMUNDSON,
RICK VEST, KEITH HARVAT, CHRIS
CANTRELL, SCOTT FRAKES, MARK
BENNE, KEVIN STUKENHOLTZ, JIM
PESCHONG, SHERRY MORROW,
CONNIE PFEIFFER, BRAD
ALEXANDER, and DARIA
ANDERSON-FADEN,

        Defendants.

**4:21CV3042**

**MEMORANDUM
AND ORDER**

Plaintiff, a state prisoner being held as a pretrial detainee at the Lancaster County Jail, filed his pro se Complaint (Filing 1) on February 25, 2021, and has been granted leave to proceed in forma pauperis ("IFP"). Having since waived Plaintiff's initial partial filing fee requirement, court will now conduct an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. LEGAL STANDARDS ON INITIAL REVIEW

The Prison Litigation Reform Act ("PLRA") requires the court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must "dismiss the complaint, or any

portion of the complaint," it determines "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Comparable language is contained in 28 U.S.C. § 1915(e)(2)(B) (applicable to IFP plaintiffs).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF COMPLAINT

Plaintiff brings this action under 42 U.S.C. § 1983, and complains he was disciplined in retaliation for his refusal to allow his temperature taken as part of the jail's Covid-19 testing procedure. Plaintiff alleges that while he was housed in J-Pod he received 6 disciplinary reports and sanctions for refusing to have his temperature

taken, which resulted him being restricted to his cell for 35 days, although he was permitted to shower during his 1-hour "out times." Plaintiff was later moved to S-Pod, where he allegedly was denied "out time" for showers on 7 different days between November 9-21, 2020. Plaintiff notes the dates and times these denials occurred, and alleges that "the correctional officer(s) in control bubble Pod S3 told me upon request to shower that they were instructed by a superior to not let me shower, if I did not let staff take my temperature." (Filing 1, pp. 18, 20.) Plaintiff alleges he subsequently told another correctional officer, Vanessa Ventry, that he was not allowed to take showers, and she then informed her superior, Lt. Mueller, who directed that Plaintiff be permitted his "out time" for showers even though Plaintiff would not allow his temperature be taken. Plaintiff alleges that being disciplined and confined to his cell in S-Pod for 24-hours on 7 days was "cruel and unusual" punishment and was in violation of jail standards. Plaintiff also claims he was denied procedural due process. (Filing 1, p. 21.) He seeks to recover damages for mental anguish and emotional distress, and unspecified declaratory or injunctive relief.[1] (Filing 1, pp. 16-17, 21.)

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges Defendants violated his rights under the Fifth, Eighth, and Fourteenth Amendments. Defendants, all of whom are sued both in their individual and official capacities, include: (1) Brad Johnson, Director of Lancaster County Department of Corrections ("LCDC"); (2) Ken Prey, Facility Administrator for LCDC; (3) Rick Gray, Facility Administrator for LCDC; (4) numerous correctional officers, names unknown; (5)

---

[1] "[T]o recover more than nominal damages under the PLRA, a prisoner must allege or prove more than mental or emotional injury. *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018); *see* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.").

five members of the Lancaster County Board of Commissioners (Sean Flowerday, Christa Yoakum, Deb Schorr, Roma Amundson, and Rick Vest); and (6) eleven members of the Jail Standards Board (Keith Harvat, Chris Cantrell, Scott Frakes, Marke Benne, Kevin Stukenholtz, Brad Johnson,[2] Jim Peschong, Sherry Morrow, Connie Pfeifer, Brad Alexander, and Daria Anderson). (Filing 1, pp. 2-3, 12-15.)

## A. Claims Made Against Defendants

Plaintiff claims the county commissioners are liable "for the actions of their subordinate (Brad Johnson) whom this board appointed as an (employee) to be 'Director' of the named 'Lancaster County Dept. of Corrections' …." (Filing 1, p. 16.) This statement is incorrect as a matter of law. "It is well settled that § 1983 does not impose *respondeat superior* liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Plaintiff's Complaint fails to state a claim upon which relief may be granted against the county commissioners.

Plaintiff claims the members of the Jail Standards Board are liable "for the failure of their 'jail standards minimum requirements' … to be enforced and adhered to [so] that inmates are provided daily showers …." (Filing 1, p. 16.) "The Jail Standards Board established within the Nebraska Commission on Law Enforcement and Criminal Justice is responsible for developing minimum standards for the construction, maintenance, and operation of criminal detention facilities by political subdivisions in Nebraska. *See* Neb. Rev. Stat. § 83-4,124 *et seq.*; *see also* Neb. Rev. Stat. § 47-101 (providing that Jail Standards Board shall prescribe rules for the regulation and government of county jails)." *Nelson v. Hjorth*, No. 8:18CV88, 2018 WL 2050571, at *4 (D. Neb. May 2, 2018).

---

[2] This is the same Brad Johnson who is sued in his capacity as Director of Lancaster County Department of Corrections.

The members of the Jail Standards Board cannot be held liable under § 1983 for their alleged failure to enforce jail standards. A similar claim was rejected by the United States Court of Appeals for the Fifth Circuit in *Bush v. Viterna*, 795 F.2d 1203 (5th Cir. 1986), because the Texas Commission on Jail Standards did not have a legal obligation to enforce jail standards:

> When the Texas legislature created the Commission, the authority to supervise, direct, or control the actual daily operation of each county jail lay with the elected sheriff of the county, subject to a superintending role of the county commissioner's court, the basic legislative body in each Texas county. Neither the statute nor its legislative history suggests an intent to oust the counties from their historic role.

> The statute creating the Commission, Tex. Rev. Civ. Stat. Ann. art. 5115.1 (Vernon Supp.1986), empowers that entity to act in several ways. In doing so it distinguishes between grants to the Commission of discretionary authority to act and impositions of mandatory duties to act. For example, the law provides that the Commission *shall* establish minimum standards for the physical plant of county jails, for custodial care, and for staffing and services at those facilities. Tex. Rev. Civ. Stat. Ann. art. 5115.1 § 9(a)(1)-(3) (Vernon Supp.1986). Similarly, the Commission is obliged to require and review reports about the jails from county sheriffs and commissioners and to report any noncompliance with Commission standards or state law to those local officials and to the governor. *Id.* §§ 9(a)(8)-(9), 11(b). When the statute turns to enforcement, however, it gives the Commission broad powers without imposing any obligation to act. *See id.* § 11(d) ("If the [county] commissioners or sheriff does not comply [with commission orders] within the time granted by the commission, the commission *may*, by order, prohibit the confinement of prisoners in the noncomplying jail.") (emphasis added); *id.* § 11(f) ("The commission, in lieu of closing a county jail, *may* institute an action [in state court] in its own name to enforce, or enjoin the violation of, its orders, rules, or procedures, or of Article 5115 Revised Civil Statutes of Texas, 1925, as amended.") (emphasis added).

> It appears from this statutory scheme that while the legislature imposed upon the Commission a duty to promulgate standards and

investigate compliance, it did not impose a legal obligation to enforce those, or any other, standards. It follows that the asserted causal relationship between the Commission's breach of a state-imposed duty and any constitutional inadequacy of a particular county jail must rest upon the absence of announced regulation.

*Id.*, at 1204-05.

Nebraska's statutory scheme is comparable. It provides, *inter alia*, that "the Jail Standards Board shall have the authority and responsibility … [t]o develop minimum standards for the construction, maintenance, and operation of criminal detention facilities …." Neb. Rev. Stat. Ann. § 83-4,126(1)(a) (Westlaw 2021). "If an inspection [conducted by personnel of the Nebraska Commission on Law Enforcement and Criminal Justice under section 83-4,131] … discloses that the criminal detention facility … does not meet the minimum standards established by the Jail Standards Board, the board shall send notice, together with the inspection report, to the governing body responsible for the facility." Neb. Rev. Stat. Ann. § 83-4,132 (Westlaw 2021). "If the governing body of the … criminal detention facility… fails to initiate corrective action within six months after the receipt of such inspection report, fails to correct the disclosed conditions, or fails to close the criminal detention facility, … the Jail Standards Board *may* petition the district court within the judicial district in which such facility is located to close the facility." Neb. Rev. Stat. Ann. § 83-4,133 (Westlaw 2021) (emphasis supplied). While the Jail Standards Board is required to establish jail standards and to forward inspection reports to local governing bodies, the Board's sole enforcement responsibility (i.e., petitioning a district court for closure of a noncompliant facility) is discretionary and it cannot form the basis for a § 1983 action.

Furthermore, "a violation of jail standards does not equate with a violation of the Constitution." *Nelson*, 2018 WL 2050571, at *4 (quoting *Henderson v. Greeley*, No. 6:13-CV-06137, 2015 WL 1280312, at *2 (W.D. Ark. Mar. 20, 2015)). "Jail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards." *Grayson v. Ross*, 454 F.3d 802, 812 (8th Cir. 2006) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991) (per curiam)).

Plaintiff claims Brad Johnson, as Department Director, and Ken Prey and Rick Gray, as Facility Administrators, are liable "for the actions of [their] 'subordinates' use of a 'retaliatory practice' to deny the plaintiff to shower." (Filing 1, pp. 16-17.) This is another incorrect statement of the law. "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a *respondeat superior* theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001). Rather, a supervisor's liability arises if:

> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

*Id.* (quoting *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir.1996). Plaintiff's allegations fail to establish these necessary elements. Plaintiff only alleges that he contacted the Director after-the-fact, when a grievance he submitted to a grievance investigator on December 6, 2020, was returned to him. (Filing 1, p. 19.) Plaintiff alleges his shower privileges were restored after November 21, 2020, even though he continued to refuse to have his temperature taken, and does not allege that he was otherwise disciplined after that time. (Filing 1, pp. 20-21.)

Finally, Plaintiff claims "(unknown by name and rank) Lancaster County correctional officers/employees" are liable "for the use of a 'retaliatory practice' to deny the plaintiff to shower." (Filing 1, p. 16.) "It is generally impermissible to name fictitious parties as defendants in federal court, but 'an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). "Dismissal is proper only when it appears that the true identity of the defendant cannot be learned through

discovery or the court's intervention."[3] *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *see Majors v. Baldwin*, 456 F. App'x 616, 617 (8th Cir. 2012) (per curiam; unpublished) (remanding for further consideration the pre-service dismissal of claims against unnamed defendants who it appeared could be identified); *Wheat v. Schriro*, 80 F. App'x 531, 534 (8th Cir. 2003) (per curiam; unpublished) (reversing dismissal of retaliation claim against unidentified third-shift corrections staff where "there is no reason to believe that on remand their identities could not be discovered"); *cf. Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (district court did not err in dismissing claims against Doe defendants where complaint "does not sufficiently allege who the Doe Defendants are, what they allegedly did, what their position is for the City, or any other facts that would permit the Doe Defendants to be noticed or identified through discovery"); *Gray v. Weber*, 244 F. App'x 753, 754 (8th Cir. 2007) (per curiam; unpublished) (affirming pre-service dismissal where the only named defendant, a prison warden, was not alleged to have any personal involvement in, or direct responsibility for, alleged denial of medical care, and it was impossible to discern from complaint which medical-staff employees were responsible for denying plaintiff care). In this case, because Plaintiff has provided the dates and times when correctional officers in the control bubble for Pod S3 denied his requests to shower, the identities of such officers should be readily discoverable from LCDC's staffing records. There should also be records showing which officers who issued disciplinary reports to Plaintiff.

## B. Section 1983 Retaliation Claim

To prevail on his § 1983 retaliation claim, Plaintiff must show: (1) he engaged in a constitutionally protected activity, (2) a defendant took adverse action that

---

[3] "It is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit. *See Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 789 (7th Cir. 1995) (Posner, C.J.). This rule has been relaxed, however, in actions brought by *pro se* litigants. *Id.* In a number of cases analogous to that at bar, appellate courts have found error in a trial court's refusal to assist a *pro se* plaintiff in identifying a defendant. This is particularly so where the plaintiff is incarcerated, and is thus unable to carry out a full pre-trial investigation." *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997).

would chill a person of ordinary firmness from continuing in that activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (describing elements of First Amendment retaliation claim). "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004) (quoting *Cody v. Weber*, 256 F.3d 764, 770-71 (8th Cir.2001)). To be actionable, the retaliatory conduct itself need not be unconstitutional. *Id.* Plaintiff's claim fails at the first step because, on the facts alleged, he did not engage in a constitutionally protected activity by refusing to have his temperature taken.

Plaintiff contends he has a constitutional right to refuse medical treatment under the Fourteenth Amendment. (Filing 1, p. 18.) Even assuming *arguendo* that taking a person's temperature constitutes as "medical treatment," a prisoner does not have an absolute right to refuse such treatment. "[T]he minimal intrusion occasioned by an involuntary temperature scan … is so clearly outweighed by the pressing need to control the spread of a deadly pandemic within the prison population that the plaintiff fails to state a viable claim." *Casey v. Parker*, No. 3:20-CV-00525, 2020 WL 5424075, at *3 (M.D. Tenn. Sept. 10, 2020). As that court explained:

> [E]ven if the plaintiff had named proper defendants or identified a policy underlying the temperature check, his allegations simply do not rise to the level of a constitutional violation. The plaintiff is correct that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). But that right "is not absolute and is particularly susceptible to regulation in the prison setting." *Davis v. Agosto*, 89 F. App'x 523, 528 (6th Cir. 2004). Even a procedure as forcible and invasive as holding an inmate down and suturing his wound is acceptable upon a determination that such actions were "necessary to the health and safety of [the inmate] as well as those around him." *Id.* Other procedures found to be constitutionally acceptable in prison include non-consensual delousing, blood-pressure and weight checks, and even catheterization. *See Leath v. Webb*, 323 F. Supp. 3d 882, 894 (E.D. Ky. 2018) (collecting cases). Accordingly, the forcible medical intake screening of inmates, including "minimally

invasive [and] necessary" checks of blood pressure, temperature, and pulse have been held to be constitutionally acceptable, because they are "necessary to ensure the safety of [the inmate] and those around him." *Id.*

*Id.*, 2020 WL 5424075 at *2.

A more intrusive means of testing for Covid infections was also upheld against constitutional attack in *Wilcox v. Lancour*, No. 2:20-CV-183, 2021 WL 230113 (W.D. Mich. Jan. 22, 2021), in which a prisoner claimed correctional officers violated his due process rights when they inserted a swab deep into his nasal passage to test him for Covid-19. The court stated

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). "[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment ...." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). This liberty interest survives conviction and incarceration. *Washington v. Harper*, 494 U.S. 210, 221 (1990) (recognizing an individual's liberty interest in avoiding the unwanted medical treatment).

In *Harper,* 494 U.S. 210, the Supreme Court established the analysis for due process claims based on the forced administration of medical treatment to prisoners. The *Harper* Court recognized that a prisoner had a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs ...." *Id.* at 221. The Court held, however, that "the proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.' " *Id.* at 223 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). *See also McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (applying *Turner* test to mandatory tuberculosis treatment).

Under *Turner*, to determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court

must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90. Moreover, in evaluating whether a prisoner's constitutional rights have been violated, courts routinely accord great deference to prison officials' assessments of their interests. *Id.* at 84-85 ("Prison administration ... is ... a task that has been committed to the responsibility of [the legislative and executive branches], and separation of powers concerns counsel a policy of judicial restraint." *Id.* at 85; *see also Harper*, 494 U.S. at 224 (1990); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125–126 (1977). The need for deference is even stronger where, as here, a state penal system is involved, due to concerns with comity that are inherent in our federal system. *Id.* (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)).

* * *

As in *Harper*, there can be little doubt that Defendants in the instant case had a legitimate penological purpose in testing the prison population for the SARS-CoV-2 virus. In the context of an Eighth Amendment challenge to precautions taken by a federal prison in the face of the COVID-19 pandemic, the Sixth Circuit has held that COVID-19 poses a substantial risk of serious harm to prison inmates, given the substantial risk of contagion to those housed in close-contact situations, such as prisons, as well as the serious risks to health and life when the disease is contracted. *see Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (recognizing the seriousness of both the transmissibility of COVID-19 in the prison setting and the health risks to individuals who contract the disease). Under these circumstances, Defendants had a legitimate—indeed compelling—governmental interest in testing all prisoners for the presence of the SARS-CoV-2 virus, in order to meet its obligations to control contagion and to protect

its other prisoners and staff. *see Jolly v. Courghlin*, 76 F.3d 468, 477 (2d Cir. 1996) (holding that a prison had a compelling state interest in mandatory tuberculosis testing); *Dunn v White*, 880 F.2d 1188, 1195 (10th Cir. 1989) (holding that a prison had a legitimate penological interest in ascertaining the extent of contagion that justified coercive blood testing for AIDS); *Wilson v. Wilkinson*, 608 F. Supp. 2d 891 (S.D. Ohio 2007) (upholding state statute requiring mandatory DNA testing of prisoners against Fourth Amendment challenge); *see also McDougald v. Stone*, No. 1:17-cv-72, 2017 WL 8222430, at *5 (S.D. Ohio Aug. 22, 2017) (finding legitimate penological interest in mandatory blood-draw of prisoner who spit on officer). The first prong of *Turner* therefore unquestionably is met.

The second factor—whether there remain means of exercising the constitutional right—is inapplicable to the analysis of a due process claim for unwanted medical testing and treatment. *see Harper*, 494 U.S. at 224 (recognizing that the second *Turner* factor is not relevant in evaluating a prisoner's due process claim for unwanted medical treatment).

With respect to the third factor—the impact of accommodating Plaintiff's right under these circumstances would impose on the rights of other inmates and prison personnel—falls squarely in favor of Defendants. In *Harper*, the Supreme Court concluded that the accommodation of Plaintiff's interest in not being medicated for his mental disability could not be accommodated while meeting the legitimate and compelling needs of the prison to protect all prisoners and staff. *Id.* at 225. Here, accommodating Plaintiff's desire to be excused from a minimally intrusive nasal-swab test would prevent Defendants from meeting their need to identify COVID-19-positive prisoners and to isolate them. Plaintiff's demand to be excluded from testing would undermine the efficacy of the testing protocol, pose increased risks to Plaintiff and others, and prevent the prison from meeting its Eighth Amendment obligations to all prisoners.

For the same reasons, no ready alternatives exist that would fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90. Plaintiff's claim, therefore, also fails on the fourth *Turner* factor.

*Id.*, 2021 WL 230113 at *7-9.

The *Wilcox* plaintiff also claimed the nasal swab violated his rights under Fourth Amendment. The district court rejected this claim for the same reasons outlined above, but also analyzed the claim by applying the Fourth Amendment balancing test set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979). The court reached the same result, stating:

> Even were the Court to apply the arguably more lenient standard of *Bell*, 441 U.S. 520, which "require[s] a balancing of the need for the particular search against the invasion of personal rights that the search entails[,]" *id.* at 558, Plaintiff's allegations would fall short. Courts have recognized that prisoners have an extremely limited expectation of privacy under the Fourth Amendment. *see Hudson* [*v. Palmer*, 468 U.S. 517, 524-28 (1984)] (recognizing that a prisoner has only a limited privacy interest under the Fourth Amendment); *Bell*, 441 U.S. at 558. The Sixth Circuit has upheld against a Fourth Amendment challenge the nonconsensual taking of blood samples from prisoners, relying on an inmate's "sharply reduced expectation of privacy, and the minimal intrusion required in taking a blood sample for DNA analysis" for identification purposes. *United States v. Conley*, 453 F.3d 674, 680 (6th Cir. 2006) (confirming the constitutionality of blood draws under the Federal DNA Act, 42 U.S.C. § 14135a). Applying the *Bell* standard, other courts have upheld mandatory blood draws in prisons in furtherance of drug testing and to control the spread of communicable diseases. *see Dunn*, 880 F.2d at 1195 (holding that a prison's substantial interest ascertaining the extent of contagion constitutes a legitimate penological purpose that outweighed reduced privacy interest of prisoner, and justified coercive blood testing for AIDS); *Harris v. Thigpen*, 941 F.2d 1495, 1501 (11th Cir. 1991) (the testing and segregation of prisoners from AIDS constitutes a legitimate penological interest and survives review under *Turner*). In addition, a number of courts have held that mandatory tuberculosis testing is reasonable under the Fourth Amendment. *see Bowell v. Cal. Dep't of Corr.*, No. 2:17-cv-981, 2020 WL 4368087, at *5-6 (E.D. Cal. July 30, 2020) (holding that mandatory TB testing did not violate the constitution) (citing cases); *Mack v. Campbell*, No. 91-5181, 1991 WL 243569 (6th Cir. Nov. 21, 1991); *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464 (S.D. Ohio

1998). Further, courts have recognized that, in addition to having a substantial interest in assessing and controlling contagion, states have an affirmative duty to protect other inmates from infectious disease. *Jolly*, 76 F.3d at 477 (citing cases).

> The nasal swabbing about which Plaintiff complains appears even less intrusive than the blood draws discussed in the cited cases. It arguably falls closer to the buccal swabbing to collect DNA, which the Supreme Court has upheld as reasonable under the Fourth Amendment, even for a person who has only been arrested, rather than convicted, and therefore has somewhat greater privacy expectations. *see Maryland v. King*, 569 U.S. 435, 463 (2013) (balancing the law-enforcement-related concerns against the minimal intrusion on privacy). Most certainly, the balancing of Plaintiff's limited Fourth Amendment interest against the significant governmental interest in controlling a pandemic weighs heavily in favor of permitting Defendants to subject Plaintiff to the limited intrusion of a deep nasal swab.

*Id.*, 2021 WL 230113 at *11.

In short, Plaintiff's claim that a prisoner has a constitutional right to refuse to have his temperature taken for purposes of Covid-19 testing is unsupportable. Thus, any alleged retaliatory conduct by Defendants is not actionable under § 1983.

## C. Eighth Amendment Claim

Plaintiff also claims that the suspension of his shower privileges for 7 days was an Eighth Amendment violation. Because Plaintiff alleges he is pretrial detainee (see Filing 1, p. 4), the Eighth Amendment "has no application" to him. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). But the Fourteenth Amendment gives state pretrial detainees rights which are "*at least as great* as the Eighth Amendment protections available to a convicted prisoner." *Id.* (emphasis in original; quoting *City of Revere*, 463 U.S. at 244); *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014)). "Due process requires that a pretrial detainee not be punished." *Walton*, 752 F.3d at 1117 (quoting *Bell*, 441 U.S. at 535 n.16).

The Eighth Circuit has determined that a conditions-of-confinement claim brought by a pretrial detainee should be analyzed using an objective "punishment" standard, rather than a subjective "deliberate indifference" standard. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020). This is because the Supreme Court has held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37.

> The Court [in *Bell*] articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. If conditions are found to be arbitrary or excessive, it is permissible to infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Stearns*, 957 F.3d at 907 (internal quotation marks and citations omitted).

Applying this standard, the court concludes on initial review that Plaintiff's Complaint states a plausible claim against the unknown correctional officers who were responsible for not allowing Plaintiff to leave his cell to take a shower. This would include the officers who denied Plaintiff's request, as well as any superior officer who issued a directive that Plaintiff not be allowed to shower.

### D. Fifth Amendment Claim

Plaintiff claims Defendants denied his right to procedural due process under the Fifth Amendment when detention sanctions were imposed before his "appeals" were answered by the detention officer. Plaintiff alleges that when he received "disciplinary reports" in J-Pod for refusing to have his temperature taken, he would write on his "appeals" that he had a right to refuse medical treatment and was exercising his Fourth Amendment right to be free from bodily intrusion. (Filing 1, p. 18.) Plaintiff also alleges he was not provided any notice that if he refused to have

his temperature taken, he would receive disciplinary reports and would be denied shower privileges and restricted to his cell for 24 hours. (Filing 1, p. 22.) Because Defendants are state actors, the court construes this procedural due process claim as arising under the Due Process Clause of the Fourteenth Amendment, rather than the Fifth Amendment.

As thus construed, this claim will be allowed to proceed against the officers who are alleged to be responsible for the cell restrictions and loss of shower privileges. *See Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) (When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand.") (quoting *Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir.1983)); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) ("A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less."); *cf. May v. Higgins*, No. 420CV00826BRWJJV, 2020 WL 4919562, at *3 (E.D. Ark. Aug. 7, 2020) (pretrial detainee who lost commissary privileges for one week for refusing to have his temperature taken failed to plead plausible procedural due process claim because isolating a detainee to prevent the spread of Covid-19 is not punishment), *report and recommendation adopted*, No. 420CV00826BRWJJV, 2020 WL 4905833 (E.D. Ark. Aug. 20, 2020), *appeal dismissed*, No. 20-2854, 2020 WL 8743616 (8th Cir. Oct. 1, 2020).

### E. Motion to Appoint Counsel

The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel.... The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel ...." *Id.* (quotation and citation omitted). No such benefit is apparent at this time. Thus, Plaintiff's motion to appoint counsel (Filing 4) will be denied without prejudice.

# IV. CONCLUSION

Plaintiff's plausibly alleges that unknown correctional officers violated his rights to substantive and procedural due process under the Fourteenth Amendment,[4] but in all other respects Plaintiff's Complaint fails to state a claim upon which relief may be granted. The County Commissioners, Jail Standards Board members, and LCDC Director and Facilities Administrators cannot be held vicariously liable under 42 U.S.C. § 1983, and Plaintiff's retaliation claim fails as a matter of law.

As a litigant proceeding in forma pauperis, Plaintiff is entitled to have service of process performed by the United States Marshals.[5] *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). However, the Marshals Service cannot initiate service upon unknown defendants. *Valentine v. Brown*, No. 8:16CV131, 2016 WL 3910259, at *2 (D. Neb. July 14, 2016).

The court will allow Defendant Brad Johnson, in his official capacity as Director of Lancaster County Department of Corrections, to be served with process so that Plaintiff may serve the Director with written interrogatories for the limited purpose of discovering the identity of the individuals who allegedly violated

---

[4] The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in his Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

[5] Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

Plaintiff's constitutional rights.[6] Plaintiff must comply with Federal Rule of Civil Procedure 33 and Nebraska Civil Rule 33.1 in serving these written interrogatories. The court will also expedite discovery by permitting Plaintiff to serve such written interrogatories as soon as an appearance has been entered on behalf of Defendant Johnson.[7] But Defendant Johnson shall *not* be required to respond to Plaintiff's Complaint; he will only be required to enter an appearance in response to the summons. It is the court's intention that Defendant Johnson will be dismissed from the action after answering Plaintiff's written interrogatories.

On the court's own motion, Plaintiff shall have 90 days in which to file an amended complaint that alleges a plausible claim for relief against one or more correctional officers, including at least one officer who is identified by name, for violating Plaintiff's due process rights (substantive, procedural, or both) under the Fourteenth Amendment by restricting Plaintiff to his cell and denying him shower privileges. As a prisoner, Plaintiff will be limited to seeking a declaration that his rights were violated, and nominal damages of $1.00 (one dollar) for his alleged mental or emotional injuries. *See* 42 U.S.C. § 1997e(e).

---

[6] The court authorized a similar procedure in another case filed by Plaintiff. *See Webb v. State of Nebraska*, No. 8:19CV416 (Filing 45, Jan. 22, 2020).

[7] Rule 26 of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). However, this court's General Order No. 2020-01 provides that "all pro se civil cases (where the plaintiff is proceeding without a lawyer) that are assigned to a district judge for trial, whether filed by a prisoner or not, are exempted from the disclosure and conference requirements of Federal Rule of Civil Procedure 26." (Filing 6, pp. 2-3, ¶ 17.) "The court will not issue a scheduling packet in a pro se civil case assigned to a district judge. Instead, the court will issue a progression order, addressing discovery and other issues, approximately thirty days after the last defendant has answered. No discovery in pro se civil cases assigned to a district judge may take place until a progression order is entered unless the court's [*sic*] orders otherwise. Requests to engage in discovery before the court enters the progression order must be made by motion." (*Ibid.*, p. 3, ¶ 18.) In this case, the court is ordering that Plaintiff may engage in limited discovery prior to the entry of a progression order.

If Plaintiff files an amended complaint within 90 days of today's date, the court will conduct another initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether the case may proceed. Otherwise, this action will be dismissed without prejudice and without further notice.

IT IS THEREFORE ORDERED:

1.  This action shall proceed to service of process against Defendant Brad Johnson, Director of Lancaster County Department of Corrections, in his official capacity only, and solely for the purpose of permitting Plaintiff to serve written interrogatories upon the Director in order to determine the identity of LCDC correctional officers who are alleged to have violated Plaintiff's constitutional rights. Defendant Johnson need only enter an appearance; he shall *not* be required to respond to Plaintiff's Complaint (Filing 1), which the court has determined fails to state a claim upon which relief may be granted against Defendant Johnson, in either his official or individual capacity.

2.  All other named Defendants, including Defendant Brad Johnson in his individual capacity and in his official capacity as a member of the Jail Standards Board, shall no longer be parties to this action. It is the court's intention that Defendant Brad Johnson, in his official capacity as Director of Lancaster County Department of Corrections, will also be dismissed from the action after answering Plaintiff's written interrogatories.

3.  After service of process has been obtained and Defendant Johnson has entered an appearance, Plaintiff, in accordance with applicable Federal Rules of Civil Procedure and the court's local rules, may serve one set of written interrogatories upon Defendant Johnson for the limited purpose of discovering the identity of the correctional officers who are alleged in the Complaint (Filing 1) to have violated Plaintiff's due process rights by restricting Plaintiff to his cell and denying him shower privileges for his refusals to permit his temperature to be taken.

4. Plaintiff shall have 90 days from today's date in which to file an amended complaint which states a claim upon which relief may be granted against one or more correctional officers. In his amended complaint, Plaintiff must identify at least one defendant by name. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

5. In the event Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

6. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

7. The Clerk of the Court is directed to set a pro se case management deadline using the following text: **August 17, 2021—amended complaint due**.

8. Plaintiff's motion to appoint counsel (Filing 4) is denied without prejudice.

9. For service of process on Defendant Brad Johnson, Director of Lancaster County Department of Corrections, **in his official capacity**, the Clerk of the Court is directed to complete a summons form and a USM-285 form

using this address, as specified in Neb. Rev. Stat. § 25-510.02(2) for service upon a county: [8]

> Lancaster County Clerk
> 555 South 10th Street, Room 108
> Lincoln, NE 68508

10. The Clerk shall then forward these completed forms, together with a copy of Plaintiff's Complaint (Filing 1) and a copy of this Memorandum and Order, to the Marshals Service for service upon said Defendant by certified mail or other authorized method. *See* Fed. R. Civ. P. 4(e).

11. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

12. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 19th day of May, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

---

[8] "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (quoting *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)). Neb. Rev. Stat. § 25-510.02(2) states: "Any county, city, or village of this state may be served by personal, residence, or certified mail service upon the chief executive officer, or clerk."