IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

YOHAN WEBB,

                    Plaintiff,

        vs.

BRAD JOHNSON, et al.,

                    Defendants.

**4:21CV3042**

**MEMORANDUM
AND ORDER**

Plaintiff, a state prisoner being held at the Lancaster County Jail, filed his pro se Complaint (Filing 1) on February 25, 2021, and was granted leave to proceed in forma pauperis ("IFP"). The court conducted an initial review of the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A and, in a Memorandum and Order entered on May 19, 2021 (Filing 17), concluded Plaintiff had plausibly alleged that unknown correctional officers violated his rights to substantive and procedural due process under the Fourteenth Amendment. The court (1) authorized service of process on Defendant Brad Johnson, in his official capacity as Director of Lancaster County Department of Corrections, for the limited purpose of allowing Plaintiff to conduct discovery to identify the individuals who allegedly violated his constitutional rights, and (2) gave Plaintiff 90 days to file an amended complaint that alleges a plausible claim for relief against those individuals, at least one of whom must be identified by name. After obtaining extensions of time, Plaintiff filed his Amended Complaint (Filing 71) on November 15, 2021. The court will now conduct an initial review of the Amended Complaint to determine whether summary dismissal is appropriate.

## I. LEGAL STANDARDS ON INITIAL REVIEW

The Prison Litigation Reform Act ("PLRA") requires the court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On such initial review, the court must "dismiss the complaint, or any portion of the complaint," it determines "(1) is frivolous, malicious, or fails to state

a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Comparable language is contained in 28 U.S.C. § 1915(e)(2)(B) (applicable to IFP plaintiffs).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff brings this action under 42 U.S.C. § 1983, and complains he was disciplined for refusing to allow his temperature to be taken as part of the Lancaster County Jail's Covid-19 testing procedure.

Plaintiff alleges that each day between October 12-18, 2020, while he was housed in J-Pod (general population), he received disciplinary reports which resulted in him being restricted to his cell except for one hour each day, when he was allowed out to shower while other inmates were not present. A total of 39 days of disciplinary

detention was imposed. The correctional officers who issued the disciplinary reports are identified, but are not named as Defendants. (Filing 71 at 5-6.) The disciplinary reports allegedly were issued pursuant to a directive from Defendant Brad Johnson. Plaintiff alleges "Brad Johnson had a meeting with his staff and decided to implement a directive and create a list of inmates who were not letting staff take their temperatures to not allow these inmates out of their cells for 'day room times' which are the inmates' scheduled times to take showers and are the only times they can do so in a 'general population status' or an 'administrative segregation / keep separate status'." (Filing 71 at 7.)

Plaintiff alleges he was moved to S-Pod (administrative segregation) in late October or early November 2020, where he was to have no person-to-person contact with other inmates or with staff. Plaintiff was assigned a 1-hour period each day when he could shower, but Plaintiff alleges he was not allowed out of his cell on seven occasions between November 9-21, 2020. Four correctional officers, who allegedly refused to open Plaintiff's cell door during this time period, are named as Defendants: Joseph Wilson, Tyson Helm, Quentin Houchin, and Joshua Eaton.[1] (Filing 71 at 8-9.) Plaintiff "does not believe that the correctional officers were acting on their own initiative, but were following a directive from a superior which was passed down thru their chain of command." (Filing 71 at 10.) Plaintiff further speculates the directive may have been issued by Defendant Brad Johnson on instructions from the Jail Standards Board. (*Ibid.*) Members of the Jail Standards Board are named as Defendants in the Amended Complaint, as are two Facility Managers, Ken Prey and Rick Gray. (Filing 71 at 2-3.)

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution[2] or created by federal statute, and also

---

[1] More specifically, Plaintiff alleges he was denied permission to leave his cell by Wilson on November 9 and 10, by Helm on November 11, 12, and 21, by Houchin on November 15, and by Eaton on November 20.

[2] Plaintiff also generally cites the Nebraska Constitution. The court will not separately analyze any state-law claims at this time. "The Nebraska Supreme Court has indicated that the federal and state constitutions contain similar due process

3

must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A. Jail Standards Board Members

The court explained in its previous Memorandum and Order that members of the Jail Standards Board cannot be held liable under § 1983 for their alleged failure to enforce jail standards, and it dismissed them as parties. The court will not repeat that discussion, but will simply state that the allegations of the Amended Complaint do not cure the pleading deficiencies previously noted. Plaintiff alleges, for example, that "it is reasonably [sic] to assume that this 'directive' [to correctional officers not to let Plaintiff out of his cell] began with the Director of this facility, Brad Johnson, whom [sic] may have been directed by his Jail Standards Board members to issue such a 'directive' at this facility." (Filing 71 at 10.) This is pure speculation. Plaintiff merely cites the Board's statutory authority to inspect facilities and alleges that the agenda for a Board meeting scheduled for May 7, 2021, called for consideration of an evaluation report for the jail in Lincoln County—not Lancaster County[3]—and for the review of corrective action reports for other unspecified jails. (Filing 71 at 12.) This is not a sufficient factual basis from which to draw a reasonable inference that members of the Jail Standards Board are responsible for the claimed constitutional violations. A complaint must state "enough facts to state a claim to relief that is plausible on its face," mere conjecture will not suffice. *Twombly*, 550 U.S. at 570.

## B. Retaliation Claim

The court also explained at length in its previous Memorandum and Order that Plaintiff, as a prisoner, does not have a constitutional right under the Fourth or Fourteenth Amendments to refuse to have his temperature taken. Consequently, no § 1983 retaliation claim can be maintained against any party for disciplinary actions that were taken between October 12-18, 2020, while Plaintiff was housed in J-Pod,

---

language, and has applied the same analysis to such claims." *A.W. v. Nebraska*, No. 8:14CV256, 2015 WL 4249845, at *3 n. 9 (D. Neb. July 13, 2015) (quoting *Doe v. Nebraska,* 734 F.Supp.2d 882, 922 (D. Neb. 2010)).

[3] Even if there were an evaluation report for the Lancaster County Jail, this would not bolster Plaintiff's claim.

or for the seven times between November 9-21, 2020, when Plaintiff allegedly was not allowed to shower after being moved to S-Pod.

To prevail on a § 1983 retaliation claim, a plaintiff must show: (1) he or she engaged in a constitutionally protected activity, (2) a defendant took adverse action that would chill a person of ordinary firmness from continuing in that activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one of the three-step retaliation analysis." *Warbelton v. Houston*, No. 8:09CV132, 2010 WL 2884924, at *4 (D. Neb. July 20, 2010) (quoting *Thaddeus -X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999)).

### C. Substantive Due Process Claim

The Eighth Circuit has determined that a conditions-of-confinement claim brought by a pretrial detainee should be analyzed using an objective "punishment" standard, rather than a subjective "deliberate indifference" standard. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020). This is because the Supreme Court has held that the government may detain persons pending trial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

> The Court [in *Bell*] articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. If conditions are found to be arbitrary or excessive, it is permissible to infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Stearns*, 957 F.3d at 907 (internal quotation marks and citations omitted).

Applying this standard, the court concluded on initial review of Plaintiff's original Complaint that a plausible claim for relief was stated against the unknown

correctional officers who were responsible for not allowing Plaintiff to leave his cell to take a shower.[4] The court indicated this would include the officers who denied Plaintiff's requests, as well as any superior officer who issued a directive that Plaintiff not be allowed to shower.

In his Amended Complaint, Plaintiff has identified four correctional officers who allegedly refused to let Plaintiff out of his cell in S-Pod. Plaintiff states each of these Defendants is "sued only in his official capacity, if found to be following a[n] order or a directive to violate said policy of jail standard[s] to not allow this Plaintiff to shower," but also in his individual capacity "if found that he was acting on his own initiative to violate said policy …." (Filing 71 at 3.)

"A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). Here, the public employer is Lancaster County, but it cannot be held liable for the correctional officers' alleged misconduct under a theory of *respondeat superior* or vicarious liability.

"It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the [county] may be held liable under § 1983." *Brewington v. Keener*,

---

[4] The court is aware of a recent decision by a federal district court in Missouri which held that a pretrial detainee who alleged he was only allowed three showers in a three-week period "fail[ed] to state a § 1983 claim of constitutional dimension. *Owen v. Mississippi Co. Detention Ctr.*, No. 1:21-CV-132 AGF, 2021 WL 5823891, at *5 (E.D. Mo. Dec. 8, 2021). As precedent, the court cited *Scott v. Carpenter*, 24 Fed. App'x. 645, 647-48 (8th Cir. 2001) (unpublished), in which "the Eighth Circuit found no constitutional violation where a prisoner was only able to shower fifteen times in six months, including a twenty-eight-day period without a shower." *Owen*, 2021 WL 5823891, at *5. Although the prisoner in *Scott* was pretrial detainee, the Eighth Circuit panel applied an Eighth Amendment "deliberate indifference" standard to hold that the lower court "was not clearly erroneous in finding defendants did not wantonly deprive Scott of his basic needs." 24 F. App'x at 648. The *Scott* decision did not hold that going 28 days without a shower was only a *de minimis* deprivation.

902 F.3d 796, 801 (8th Cir. 2018) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). In other words, it is not enough to show that the officers were acting at the direction of someone who was higher in the chain of command. To prevail on an official-capacity claim, Plaintiff must show that the alleged constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

"[M]unicipal liability under § 1983 attaches where ... a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Thus a single decision by a municipal official can constitute official policy. *Id.* (citing *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)). But "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting Pembaur, 475 U.S. at 481).

"Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700).

A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see also Brossart v. Janke*, 859 F.3d 616, 627-28 (8th Cir. 2017) ("A municipality may also be liable where its policies are lawful on their face but municipal action, such as failure to train or supervise, was taken with deliberate indifference as to its known or obvious consequences and led an employee to violate a plaintiff's rights.") (quotation marks and citations omitted).

7

Plaintiff does not allege that the violation of his constitutional rights occurred because of a county policy or custom, or because of a failure to train or supervise correctional officers, nor does his Amended Complaint contain any facts from which it might reasonably be inferred that Lancaster County is responsible for the alleged violations. "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

While Plaintiff alleges his rights were violated "pursuant to Brad Johnson's directive to his subordinates to not allow the Plaintiff out of his cell to shower, if he did not let staff take his temperature" (Filing 71 at 12), no facts are alleged in the Amended Complaint to show that Brad Johnson acted as the final policymaker for the county with respect to the particular conduct challenged in this lawsuit.

"[T]he identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original). "District courts should consult two sources to identify the final policymaker: (1) state and local positive law and (2) state and local custom or usage having the force of law." *Soltesz*, 847 F.3d at 946 (internal quotations and citations omitted).

"State law, including valid local ordinances and regulations, will always direct the courts to some official or body of officials that has policymaking authority in a given area of the municipality's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). Federal courts are not justified "in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id.* at 126.

The applicable Nebraska state law provides:

In each county having a population of one hundred fifty thousand or more inhabitants, the county board shall also serve as the county board of corrections …. Any such county board of corrections shall have charge of the county jail and correctional facilities and of all persons by law confined in such jail or correctional facilities. Such county board

8

of corrections shall comply with any rule prescribed by the Jail Standards Board pursuant to sections 47-101 to 47-104.

Neb. Rev. Stat. Ann. § 23-2802 (Westlaw 2021). The law further "establishe[s] the division of corrections under the jurisdiction of the board" and provides that "[t]he administrative officer of the division shall be the director of corrections, ...." Neb. Rev. Stat. Ann. § 23-2805 (Westlaw 2021).

Unless Brad Johnson's alleged directive was ratified by the county board,[5] or unless the board delegated him absolute authority to make policy for the county in this area,[6] there can be no municipal liability. *See, e.g.*, *Cavanaugh v. Hall Cty. Dep't of Corr.*, No. 4:14CV3062, 2015 WL 6142927, at *5-6 (D. Neb. Oct. 19, 2015) (finding director of county department of corrections answered to the county board and lacked final policymaking authority), *aff'd*, 667 F. App'x 576 (8th Cir. 2016) (unpublished). Neither situation is alleged to exist here. On the facts alleged in the Amended Complaint, therefore, only individual-capacity claims can be maintained against the four correctional officers and Director Johnson for allegedly punishing Plaintiff by not allowing him out of his cell to shower.

Plaintiff alleges that the two Facility Administrators, Ken Prey and Rick Gray, "failed to provide jail standard policy for inmates to shower and time out of their

_____

[5] "A final policymaker ratifies the decision of a subordinate when [it] takes an affirmative act to approve both the decision and the basis for the decision." *Soltesz*, 847 F.3d at 947 (citing *Praprotnik*, 485 U.S. at 127). "Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." *Id.* (quoting *Lytle v. Carl*, 382 F.3d 978, 988 n. 2 (9th Cir. 2004)).

[6] "A subordinate official possesses delegated final policymaking authority when that official acts (1) free of review and (2) without any constraints imposed as a matter of policy by the original policymaker. *Id.* (citing *Praprotnik*, 485 U.S. at 127). "If the board retains the authority to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur." *Id.* at 946-47 (quoting *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist.*, 523 F.3d 1219, 1229 (10th Cir. 2008)). "Simply going along with discretionary decisions made by one's subordinates ... is not a delegation to them of the authority to make policy." *Praprotnik*, 485 U.S. at 130.

cells on a daily basis to the correctional officers …." (Filing 71 at 4.) This allegation is not sufficient to state a claim upon which relief may be granted. A supervisor's "mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983." *Davis v. Buchanan Cty*., 11 F.4th 604, 625 (8th Cir. 2021) (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)).

### D. Procedural Due Process Claim

Plaintiff alleges he received no notice that he would be disciplined for refusing to have his temperature taken, and complains that sanctions were imposed before his appeals were considered. (Filing 71 at 6-7.) The court determined on initial review of Plaintiff's original Complaint that this procedural due process claim would be allowed to proceed against the officers who were responsible for the disciplinary action (see Filing 17 at 16). *See Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) (When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand.") (quoting *Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir. 1983)); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) ("A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less."); *cf. May v. Higgins*, No. 420CV00826BRWJJV, 2020 WL 4919562, at *3 (E.D. Ark. Aug. 7, 2020) (pretrial detainee who lost commissary privileges for one week for refusing to have his temperature taken failed to plead plausible procedural due process claim because isolating a detainee to prevent the spread of Covid-19 is not punishment), *report and recommendation adopted*, No. 420CV00826BRWJJV, 2020 WL 4905833 (E.D. Ark. Aug. 20, 2020), *appeal dismissed*, No. 20-2854, 2020 WL 8743616 (8th Cir. Oct. 1, 2020) (unpublished).

The officers who wrote the disciplinary reports have not been named as Defendants in the Amended Complaint, because Plaintiff "contends that the disciplinary reports written by staff for the refusal to have his temperature taken was a directive from Brad Johnson and or the administration to do so." (Filing 71 at 7.) This contention is "based upon these reports not being signed," which Plaintiff believes "is indicative that the individual is not in agreement with what is written." (*Ibid.*)

10

Although the allegation that the directive came from Brad Johnson "and or" the administration is equivocal, Plaintiff elsewhere alleges that "Brad Johnson had a meeting with his staff and decided to implement a directive and create a list of inmates who were not letting staff take their temperatures to not allow these inmates out of their cells for 'day room times' …." (Filing 71 at 7.) Liberally construed, this allegation indicates Brad Johnson directed the issuance of the disciplinary reports and restricted Plaintiff to his cell without giving Plaintiff notice or an opportunity to be heard. Because the Facility Administrators are not specifically alleged to have been involved in issuing the directive, no actionable claim is stated against them.[7]

### IV. CONCLUSION

The court finds on initial review of Plaintiff's Amended Complaint that a plausible conditions-of-confinement claim is stated against Defendants Brad Johnson, Joseph Wilson, Tyson Helm, Quentin Houchin, and Joshua Eaton, in their individual capacities, for not allowing Plaintiff out of his cell to shower on seven occasions between November 9-21, 2020, and that a plausible procedural due process claim is stated against Defendant Brad Johnson, in his individual capacity, for not giving Plaintiff notice or an opportunity to be heard before he was restricted to his cell for 39 days for refusing to have his temperature taken between October 12-18, 2020. In all other respects, however, the Amended Complaint fails to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED:

1.  The action shall proceed to service of process against Defendants Brad Johnson, Joseph Wilson, Tyson Helm, Quentin Houchin, and Joshua Eaton, in their individual capacities only, on Plaintiff's claim that he was deprived of his right to substantive due process by not being allowed out of his cell to shower on seven occasions between November 9-21, 2020. The action shall also proceed to service of process against Defendant Brad Johnson, in his individual capacity, on Plaintiff's claim that he was

---

[7] The court instructed Plaintiff in its previous Memorandum and Order to "explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him." (Filing 17 at 20.)

deprived of his right to procedural due process by not being given notice or an opportunity to be heard before being disciplined for refusing to have his temperature taken between October 12-18, 2020.

2.   All other claims are dismissed without prejudice, and all other named Defendants, including Brad Johnson in his official capacity, shall no longer be parties to this action.

3.   The Clerk of the Court is directed to complete a summons form and a USM-285 form for each Defendant, in his individual capacity, using this address: "Lancaster County Department of Corrections, 3801 West O Street, Lincoln NE 68528."

4.   The Clerk shall forward the completed forms to the Marshals Service,[8] together with five copies of Plaintiff's Amended Complaint (Filing 71) and this Memorandum and Order, for service upon Defendants by certified mail or any other authorized method. See Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01(1).

5.   The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

---

[8] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory)); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

6.   Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7.   The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "March 17, 2022: Check for completion of service of summons."

8.   Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 17th day of December 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge