IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YOHAN WEBB,<br><br>                Plaintiff,<br><br>    vs.<br><br>BRAD JOHNSON; TYSON HELM; JOESPH WILSON; QUINTON HOUCHIN; and JOSHUA EATON,<br><br>                Defendants. | 4:21CV3042<br><br><br>**MEMORANDUM<br>AND ORDER** |

## I. INTRODUCTION

    Plaintiff, Yohan Webb, a state prisoner who appears pro se, has alleged (1) a conditions-of-confinement claim against jail guards for allegedly not allowing him out of his cell to shower on seven occasions between November 9-21, 2020, and (2) a procedural due process claim against the jail's director for allegedly not giving Plaintiff notice or an opportunity to be heard before he was restricted to his cell for 39 days for refusing to have his temperature taken between October 12-18, 2020. See Memorandum and Order entered on December 17, 2021 (Filing 76). This matter is now before the court on Defendants' motion for summary judgment based on qualified immunity (Filing 161). Upon careful review of the record, the court finds Defendants' motion should be granted and Plaintiff's action should be dismissed with prejudice.

## II. SUMMARY JUDGMENT STANDARD

    "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and gives that party "the benefit of all reasonable inferences that can be drawn from the record." *State Nat'l Ins. Co., Inc. v. Washington Int'l Ins. Co.*, 304 F. Supp. 3d 827, 831-32 (D. Neb. 2018) (quoting *Minnesota ex rel. N. Pac Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 571 (8th Cir. 2012)). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

The initial burden on a moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."); *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514,

517 (8th Cir. 2015) (moving party need not produce evidence showing "the absence of a genuine issue of material fact.").

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.,* 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc*., 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

### III. QUALIFIED IMMUNITY

Qualified immunity shields officials from civil liability in a 42 U.S.C. §1983 action when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morgan v. Robinson*, 920 F.3d 521 (8th Cir. 2019) (quoting *Pierson v. California*, 555 U.S. 223, 231 (2009)). Qualified immunity involves a two-step analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 523 (quoting *Nord v. Walsh Cty*., 757 F.3d 734, 738 (8th Cir. 2014)). Unless both of these questions are answered affirmatively, a defendant is entitled to qualified immunity. Moreover, courts are permitted to exercise their sound discretion in determining which of the two prongs should be addressed first. *Id.* (quoting *Nord*, 757 F.3d at 738-39).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The clearly established right should not be defined at a high level of generality, but instead must be particularized to the facts of the case. *Id.* There does not need to be a case directly on point, but existing precedent "must have placed the statutory or constitutional question beyond debate." *Id*. at 524 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Qualified immunity gives government officials "breathing room" to make reasonable but mistaken judgments, and protects "all but the plainly incompetent or

those who knowingly violate the law." *Id*. (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)).

"Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff, however, must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002); *see Creighton v. Anderson*, 922 F.2d 443, 447 (8th Cir. 1990) ("Once the plaintiff has demonstrated that the law governing the plaintiffs' rights was clearly established at the time of the defendant's acts, the defendant has the burden of proof with respect to all other elements of the qualified immunity defense.").

### IV. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining in original). "The statement must not contain legal conclusions." *Id.* The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other

materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*[1]

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining omitted).

Defendants' brief (Filing 163) includes a separate statement of material facts which complies with Rule 56.1(a)(1). Plaintiff, however, has not responded to Defendants' numbered statements of fact, as required by Rule 56.1(b). Accordingly, those facts are considered admitted.[2]

Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g); *see Bunch v. Univ. of Ark.*

---

[1] The primary purpose of these rules "is to distill to a manageable volume the matters that must be reviewed by a court undertaking to decide whether a genuine issue of fact exists for trial. They are designed to prevent a district court from engaging in the proverbial search for a needle in the haystack." *Jones v. United Parcel Serv., Inc.,* 461 F.3d 982, 990 (8th Cir. 2006) (cleaned up). "Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007).

[2] "Nebraska's rule concerning summary judgment procedure places clear requirements on the moving and opposing parties." *Tramp v. Assoc. Underwriters, Inc.*, 768 F.3d 793, 799 (8th Cir. 2014). "[T]he rules clearly require that [the opposing party] respond in kind, and in a specific fashion, to the statement of undisputed facts asserted by [the moving parties] in their motion for summary judgment." *Id.* (holding district court properly considered the movant's statement of facts admitted where opposing party did not comply with NECivR 56.1(b)(1)).

5

*Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017) (status as pro se litigant does not excuse noncompliance with local rules regarding summary judgment). Here, the court even "referred [Plaintiff] to Federal Rule of Civil Procedure 56 and this court's corresponding local rule, NECivR 56.1, for guidance" in preparing his response to Defendants' motion for summary judgment (Filing 178). *See Webb v. Johnson*, No. 4:21CV3042, 2022 WL 2657187, at *1 (D. Neb. July 8, 2022).

## V. UNDISPUTED MATERIAL FACTS

The court finds there is no genuine dispute as to the following material facts which are properly referenced in separate numbered paragraphs in Defendants' brief in support of their motion for summary judgment and which have not been directly controverted by Plaintiff:

1. Plaintiff was arrested on October 10, 2020, was taken to the Lancaster County Adult Detention Facility ("ADF"), and has remained there since. (Ex No 7 Webb Dep. at 9:19-25)

2. At all times relevant, Brad Johnson was employed as the Director of the Adult Detention Facility during the relevant times in question. (Ex No. 2 ¶ 2)

3. At all times relevant, Joseph Wilson was employed as a correctional guard at the Adult Detention Facility during the relevant times in question. (Ex No. 3 ¶ 2)

4. At all times relevant, Tyson Helm was employed as a correctional guard at the Adult Detention Facility during the relevant times in question. (Ex No. 4 ¶ 2)

5. At all times relevant, Joshua Eaton was employed as a correctional guard at the Adult Detention Facility during the relevant times in question. (Ex No. 5 ¶ 2)

6. From October 11, 2020, to November 4, 2020, Plaintiff was housed in J-Pod, a unit of the ADF. (Ex. No. 2 ¶ 3)

7. On November 4, 2020, the Plaintiff was transferred to S-Pod and has remained there ever since. (Ex. No. 2 ¶ 3)

8. In response to the COVID-19 pandemic, Lancaster County adopted Policy 14.I.1 Pandemic Response (COVID-19). (Ex. No. 2 ¶ 3)

9. The Pandemic Response Policy requires inmates at ADF to comply with daily temperature screenings. (Ex. No. 2 ¶ 5)

10. The Pandemic Response Policy provides that inmates in S-pod who refuse a temperature screening are to remain in their cell. (Ex. No. 2 ¶ 9)

11. The Pandemic Response Policy provides that inmates in S-pod who refuse a temperature check are to be referred for disciplinary proceedings. (Ex. No. 2 ¶ 8)

12. Plaintiff refused all ADF attempts to take his temperature. (Ex. No. 7 Webb Dep. at 62:9-14)

13. Defendants Joseph Wilson only refused to release Plaintiff from his cell based on the Pandemic Response Policy. (Ex No. 3 ¶ 5)

14. Defendants Tyson Helm only refused to release Plaintiff from his cell based on the Pandemic Response Policy. (Ex No. 4 ¶ 5)

15. Defendants Joshua Eaton only refused to release Plaintiff from his cell based on the Pandemic Response Policy. (Ex. No. 5 ¶ 5)

16. Plaintiff admits that Defendants were just following policy when they refused to release him from his cell. (Ex. No. 7 Webb Dep. at 51:13-23)

17. Plaintiff admits Defendants did not intend to punish him. (Ex. No. 8 Webb Dep. at 69:12-73:11)

18. Plaintiff was provided 24-hour advance notice of all disciplinary hearings against him between the dates of October 12-18, 2020. (Ex. No. 6 ¶ 4)

19. Plaintiff was provided a copy of the investigative report that were the basis for all disciplinary hearings against him between the dates of October 12-18, 2020. (Ex. No. 6 ¶¶ 3-4)

20. Plaintiff was given an opportunity to participate in the disciplinary hearings between the dates of October 12-18, 2020. (Ex. No. 6 ¶ 6)

21. Plaintiff refused to participate in the initial disciplinary hearings between the dates of October 12-18, 2020. (Ex. No. 6 ¶ 6)

22. Plaintiff appealed the outcome of his disciplinary hearings that occurred between the dates of October 12-18, 2020. (Ex. No. 8 Webb Dep. at 40:11-14)

23. Plaintiff never appealed the disciplinary hearing based on an inability to participate in the hearing or lack of notice. (Ex. No. 8 Webb Dep. at 40:7-10)

24. Defendant Brad Johnson did not participate in Plaintiff's disciplinary hearings in any way. (Ex. No. 2 ¶ 7).

25. Plaintiff acknowledged, "Brad Johnson don't do disciplinary hearings here." (Ex. No. 8 Webb Dep. 42:16-17)

## VI. ANALYSIS

The Eighth Circuit has determined that a conditions-of-confinement claim brought by a pretrial detainee should be analyzed using an objective "punishment" standard, rather than a subjective "deliberate indifference" standard. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020). This is because the Supreme Court has held that the government may detain persons pending trial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

> The Court [in *Bell*] articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. If conditions are found to be arbitrary or excessive, it is permissible to infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Stearns*, 957 F.3d at 907 (internal quotation marks and citations omitted).

Plaintiff cannot prove his claims against the jail guards using either approach. The record shows these defendants were just following the Pandemic Response Policy when they refused to release him from his cell, and that policy was reasonably related to a legitimate governmental purpose—stemming the spread of Covid-19—

8

and was not excessive. *See, e.g., May v. Higgins*, No. 420CV00826BRWJJV, 2020 WL 4919562, at *3 (E.D. Ark. Aug. 7, 2020) (pretrial detainee who lost commissary privileges for one week for refusing to have his temperature taken failed to plead plausible procedural due process claim because isolating a detainee to prevent the spread of Covid-19 is not punishment), *report and recommendation adopted*, No. 420CV00826BRWJJV, 2020 WL 4905833 (E.D. Ark. Aug. 20, 2020), *appeal dismissed*, No. 20-2854, 2020 WL 8743616 (8th Cir. Oct. 1, 2020). Even if the constitutionality of that policy might be open to debate, Defendants are entitled to qualified immunity. Plaintiff has failed to show the law was clearly established in November 2020 that it was unconstitutional for jailers to restrict inmates to their cells for refusing to have their temperatures taken.

The evidence also conclusively establishes that Plaintiff received notice and an opportunity to be heard before being disciplined in October 2020, but that he refused to participate in disciplinary hearings. In addition, Director Johnson, the only Defendant who is alleged to have denied Plaintiff's right to procedural due process, was not involved.[3] In short, Plaintiff' procedural due process claim is frivolous.

## VII. PLAINTIFF'S MOTIONS

As a final matter, Plaintiff has filed two motions for reconsideration. First, Plaintiff requests reconsideration of the court's Memorandum and Order entered on June 29, 2022 (Filing 165), denying his fifth request for appointment of counsel (Filing 152) to represent him at the final pretrial conference. This motion (Filing 195) is moot because there will not be a trial and, in any event, is without merit. Second, Plaintiff has filed a "motion to take judicial notice" (Filing 207) in which he requests reconsideration of the court's Memorandum and Order that was entered on July 27, 2023 (Filing 202), denying his request for additional discovery (Filing 184) and seventh request for appointment of counsel (Filings 183). This motion will be denied because Plaintiff has not shown that the order was entered as a result of a

---

[3] The court allowed this claim to proceed to service of process by liberally construing Plaintiff's Amended Complaint as alleging that "Brad Johnson directed the issuance of the disciplinary reports and restricted Plaintiff to his cell without giving Plaintiff notice or an opportunity to be heard." Memorandum and Order entered on December 17, 2021 (Filing 76 at 11).

9

mistake of law or fact, or that there are any other grounds for relief. *See* Fed. R. Civ. P. 60(b). Plaintiff's allegations of misconduct are unsubstantiated.

## VIII. CONCLUSION

The court finds there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED:

1. Defendant's motion for summary judgment (Filing 161) is granted, and Plaintiff's action is dismissed with prejudice.

2. Plaintiff's motion for reconsideration (Filing 195) is denied.

3. Plaintiff's motion to take judicial notice (Filing 207) is denied.

4. Judgment shall be entered by separate document.

Dated this 4th day of August 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge